**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5502-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GARY W. JONES, a/k/a
WILLIAM FALKINBURG,
and HAKEEM JONES,

     Defendant-Appellant.

_____

Submitted December 2, 2020 – Decided December 24, 2020

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 17-04-0305.

Hegge & Confusione, LLC, attorneys for appellant (Michael Confusione, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Prosecutor of Union County, attorney for respondent (Meredith L. Balo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gary W. Jones appeals from a June 25, 2019 order denying his motion to withdraw his guilty plea and an August 9, 2019 judgment of conviction. We affirm, save for defendant's assertion of ineffective assistance of trial counsel, which we preserve for future application by defendant for post-conviction relief (PCR).

This appeal arises from a January 27, 2017 armed robbery committed by defendant outside a liquor store in Elizabeth. A Union County grand jury returned two indictments. Indictment No. 17-04-0304 charged defendant with first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1), and related offenses (the first indictment). Indictment No. 17-04-0305 charged defendant with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (the second indictment).

The underlying facts and procedural history were set forth in our opinion on direct appeal of the defendant's conviction and sentence from the first indictment.

> A jury convicted defendant Gary W. Jones of first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1); the lesser-included third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a weapon for unlawful purpose (handgun), N.J.S.A. 2C:39-4(a)(1); fourth-

degree aggravated assault with a firearm (pointing), N.J.S.A. 2C:12-1(b)(4); and fourth-degree obstruction, N.J.S.A. 2C:29-1(a). The jury acquitted defendant of third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(A) and 2C:29-2(a)(3)(B). On that same day, defendant entered a guilty plea to second-degree certain persons, N.J.S.A. 2C:39-7(b)(1), charged in a separate indictment. After merging the possession of a weapon and pointing convictions with the first-degree robbery, the judge sentenced defendant to a discretionary persistent offender extended term of fifty years subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. See also N.J.S.A. 2C:44-3(a) and 2C:43-7(a)(2). When sentenced, defendant was forty-five years old. We now affirm the convictions, vacate the sentence, and remand for a new sentence to be imposed.

The circumstances of the crime, as we describe them, were captured on surveillance tape operated by the City of Elizabeth Police Department and a second surveillance tape, belonging to the store in front of which the robbery occurred. The films, and the stills extracted from them, were shown to the jury. The victim, and police officers who arrived on the scene immediately after defendant's commission of the robbery, testified at trial.

The victim was leaving the store at approximately 10:00 p.m. when defendant, who was armed, approached him and demanded his money. The victim responded that he had nothing and attempted to enter his vehicle, parked immediately in front of the establishment. Defendant followed, grabbed the victim's arm and said, "Oh, you think I'm playing?" The victim replied, "You really want to do this?"

Defendant shot the victim in the leg. The victim began to run towards the nearby police station, while

defendant gave chase. Elizabeth Police Officer Jason Luis was driving by when he heard the gunshot. He and his partner, John Londono, immediately looked towards the sound and saw a man running in their direction, with another person close behind. The officers immediately pulled over, and as they left their vehicle heard the man closest to them yell, "He shot me," pointing to his pursuer. The second man's body was slanted sideways to the officers, his hands at his waistband.

When Luis attempted to stop the second man, the second man began to run "in a full sprint" until he stumbled. Luis tackled him onto the ground and realized he had a gun. Luis knocked the gun aside, and along with Londono wrestled the second man, defendant, until they were able to handcuff him when other officers arrived. The officers arrested defendant and seized his gun.

The officers then drove defendant to the ambulance where the victim was being treated. Luis conducted the show-up, and he testified that before he spoke to the victim, he attempted to recall the identification warnings usually made prior to a photo array or a lineup. He recorded the identification on his bodycam. Luis told the victim that there was no certainty that the person he was about to see was the perpetrator. Before police even removed defendant from the vehicle, however, the victim called out that defendant shot him.

[State v. Jones, No. A-1499-18 (App. Div. Mar. 17, 2020) (slip op. at 2-4).]

We affirmed the convictions. Id. at 2. We found that the robbery "was certainly a heinous crime in that after shooting the victim in the leg during the

robbery, defendant chased the victim. Defendant's prior criminal history made him eligible for extended-term sentencing." Id. at 14. We nevertheless vacated the sentence and remanded for resentencing, concluding that imposing "a fifty-year NERA sentence on a forty-five-year-old man [was] effectively a life sentence." Id. at 2, 14.

On the same day the jury returned its verdict on the first indictment, defendant pled guilty to the certain persons offense, in exchange for a recommended sentence of a concurrent ten-year term, subject to a five-year period of parole ineligibility. During the plea hearing, defendant testified that he understood his sentencing exposure and the recommended sentence. He acknowledged that he was pleading guilty because he was guilty and that no one forced him to do so or made him any other promises. Defendant also acknowledged the rights he was waiving by pleading guilty. Defendant testified that he answered the questions on the plea forms, initialed the pages of the plea form, signed the supplemental Graves Act plea form, and did not want to change any of his answers. He further acknowledged that he was satisfied with the services provided by counsel and had no questions for his attorney or the court.

Defendant provided a factual basis for his plea, acknowledging that on January 27, 2017, in Elizabeth, he unlawfully possessed a handgun without a

firearm permit and was not eligible to obtain a firearm permit because of a prior conviction. Based on defendant's testimony, the court accepted the plea.

Prior to sentencing on the second indictment, defendant moved to withdraw his guilty plea. In a supporting certification, defendant asserted that despite the jury's verdict, he did not possess a weapon on the date of the robbery and was not guilty of the offenses. Defendant averred that "[i]t was the alleged victim that possessed a weapon."

Defendant further asserted ineffective assistance of counsel, contending that trial counsel failed to call unnamed witnesses and failed to introduce certain evidence at the trial of the first indictment. He claimed that contrary to the testimony of one officer, who alleged that defendant had a weapon on his person when he detained him, police body camera video demonstrated that police were still searching for a weapon at the crime scene while he was already in custody.

Defendant also claimed that trial counsel gave him inaccurate legal advice by advising him that pleading guilty to the certain persons charge would not affect his appeal. He alleged that only after pleading guilty did he learn that, even if successful on his appeal of the jury verdict, he would still have the certain persons conviction and would have to serve that sentence. He also alleged that trial counsel told him that the maximum sentence for the robbery was twenty

years with an eighty-five percent parole bar. Defendant stated it was only after he pled guilty to the certain persons offense that he was made aware that the State would be moving for an extended sentence.

The court issued a June 25, 2019 order and written opinion denying defendant's motion to withdraw his guilty plea. It analyzed the motion under the four-prong test adopted by our Supreme Court in State v. Slater, 198 N.J. 145, 157-58 (2009). The court found that defendant did not present a colorable claim of innocence, did not provide any evidence to support his claim that he did not possess a weapon during the incident, did not satisfy either prong of the test to set aside a guilty plea based on ineffective assistance of counsel, and pled guilty pursuant to a plea agreement. The court also found that withdrawal of the guilty plea would not unduly prejudice the State or give defendant an unfair advantage. Thus, three of the four Slater factors weighed against allowing withdrawal of the plea.

On August 9, 2019, the judge sentenced defendant in accordance with the plea agreement to a concurrent ten-year term with a five-year parole-bar, finding aggravating factors three, six, and nine, and no mitigating factors. It found that from 1993 to 2014, defendant had been convicted of eleven crimes and exhibited

"a pattern of criminal conduct that is increasing in its severity." This appeal followed.

October 1, 2020, defendant was resentenced on the first indictment to an extended twenty-five-year NERA term on the armed robbery; a concurrent four-year term on the third-degree aggravated assault; a concurrent five-year term, subject to a forty-two-month period of parole ineligibility, on the second-degree unlawful possession of a weapon; and a one-year concurrent term on the fourth-degree obstruction. The judge found that aggravating factors one ("nature and circumstances of the offense"), N.J.S.A. 2C:44-1(a)(1); three (risk of reoffending), N.J.S.A. 2C:44-1(a)(3); six (prior record), N.J.S.A. 2C:44-1(a)(6); and nine (deterrence), N.J.S.A. 2C:44-1(a)(9); substantially outweighed mitigating factor nine (defendant unlikely to commit another offense), N.J.S.A. 2C:44-1(b)(9).

Defendant raises the following points in this appeal:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA BEFORE SENTENCING.
>
> POINT II
>
> DEFENDANT'S SENTENCE IS IMPROPER AND EXCESSIVE.

A-5502-18T2

## I.

Where a defendant asserts his innocence, we review the grant or denial of a motion to withdraw a guilty plea for abuse of discretion. State v. Tate, 220 N.J. 393, 404 (2015) (citing State v. Lipa, 219 N.J. 323, 332 (2014)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Williams, 458 N.J. Super. 274, 280 (App. Div. 2019) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

"[T]he defendant shall be permitted to withdraw the plea" if the trial court "determines that the interests of justice would not be served by effectuating the agreement reached by the prosecutor and defense counsel." R. 3:9-3(e). "[T]he timing of the motion will trigger different burdens of proof for the movant." Slater, 198 N.J. at 158. "Before sentencing, courts are to exercise their discretion liberally to allow plea withdrawals." Id. at 156 (citations omitted). "In a close case, the 'scales should usually tip in favor of defendant.'" State v. Munroe, 210 N.J. 429, 441 (2012) (quoting Slater, 198 N.J. at 156).

A defendant moving to withdraw a guilty plea "bears the burden of presenting a 'plausible basis for his request' and a good-faith basis for 'asserting a defense on the merits.'" Id. at 442 (quoting Slater, 198 N.J. at 156).

In Slater, the court adopted the following four-prong test for determining whether defendant has met this burden: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Slater, 198 N.J. at 157-58. "Trial courts should consider and balance all of the factors discussed above in assessing a motion for withdrawal of a plea. No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." Id. at 162.

As to the first prong, "[a] bare assertion of innocence is insufficient to justify withdrawal of a plea." Id. at 158. A defendant must "present specific, credible facts and, where possible, point to facts in the record that buttress [his] claim." Ibid. Courts "should simply consider whether a defendant's assertion of innocence is more than a blanket, bald statement and rests instead on particular, plausible facts." Id. at 159.

Under the second prong, the trial court should "focus[] on the basic fairness of enforcing a guilty plea by asking whether defendant has presented fair and just reasons for withdrawal, and whether those reasons have any force." Id. at 159. "The nature and strength of a defendant's reasons for withdrawal of

a plea will necessarily depend on the circumstances peculiar to the case." Munroe, 210 N.J. at 442.

Under the third prong, the trial court should place a heavier burden of proof on a defendant who enters a plea as part of a plea bargain; however, this factor receives the least weight in the overall analysis because most criminal cases are resolved through plea bargains. Slater, 198 N.J. at 160-61.

Under the fourth prong, "the critical inquiry . . . is whether the passage of time has hampered the State's ability to present important evidence." Id. at 161. "Thus, the trial court must consider the delay to the State in presenting its case to the jury because of the plea-withdrawal motion." Munroe, 210 N.J. at 443.

Applying those principles, we affirm the denial of defendant's motion to withdraw his guilty plea substantially for the reasons expressed by the trial court in its comprehensive written decision. We add the following comments.

The record supports the trial court's finding that defendant's "bare assertion of innocence" did not establish a colorable claim of innocence. Defendant's profession of innocence is belied by his admission of guilt to the charge at his plea hearing. During the plea colloquy, he admitted that he unlawfully possessed a handgun and that a prior conviction made him ineligible to obtain a firearms permit.

In addition, defendant did not present the body cam videos that he claimed supported his claim of innocence. Nor did he establish that the videos corroborate his claims or that they still exist. More fundamentally, even if defendant no longer possessed the handgun when captured by police, the evidence presented at trial satisfied the jury that he possessed the handgun during the robbery, used it to shoot the victim in the leg, and chased the victim while still holding the handgun.

Moreover, defendant pleaded guilty immediately after the jury found him guilty beyond a reasonable doubt of armed robbery, aggravated assault-causing bodily injury with a deadly weapon; unlawful possession of a weapon; possession of a weapon for an unlawful purpose (handgun); and aggravated assault with a firearm (pointing). See Jones, slip op. at 2. Aside from the merger of certain counts into the robbery, those convictions were affirmed on appeal.

As to defendant's claim of ineffective assistance of counsel, to the extent defendant's claims are reliant on matters outside the record, we decline to consider defendant's argument in the present context, applying the "general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). To that end, a claim

of ineffective-assistance-of-counsel is best addressed in a post-conviction relief proceeding. State v. Morton, 155 N.J. 383, 433 (1998). Our decision does not preclude defendant from raising his ineffective-assistance-of-counsel claim in a timely filed petition for post-conviction relief. See ibid. (citing State v. Marshall, 148 N.J. 89, 147-54 (1997) (permitting defendant to raise ineffective assistance of counsel claims in post-conviction relief proceeding despite rejection of these claims on direct appeal)).

The second factor focuses on the basic fairness of enforcing a guilty plea. It requires that the court ask whether the defendant has presented "fair and just reasons for withdrawal," and considers the effectiveness of those reasons. Slater, 198 N.J. at 159. Case law has identified a number of reasons that warrant withdrawal of a plea. Those reasons include: (i) whether "the court and prosecutor misinformed the defendant about a material element of the plea negotiation, which the defendant relied on in entering his plea;" (ii) "the defendant was not informed and, thus, did not understand material terms and relevant consequences of the guilty plea, namely, the direct, penal consequences of the plea;" (iii) the "defendant's reasonable expectations under the plea agreement were not met;" and (iv) "the defendant has not only made a plausible showing of a valid defense against the charges, but also credibly demonstrated

why that defense 'was forgotten or missed' at the time of the plea." Id. at 159-60 (citations omitted).

The nature and strength of defendant's reasons for withdrawal are inadequate. The review of the plea forms, the recitation of defendant's sentencing exposure, and the accurate description of the recommended sentence during the plea hearing, and defendant's testimony during the plea hearing, coupled with the fact that defendant was sentenced in accordance with the plea agreement demonstrate that defendant was not misled by counsel as to the outcome of his guilty plea.

Defendant alleges that trial counsel misadvised him that the maximum sentence for his robbery conviction was a twenty-year NERA term. Counsel's advice was accurate at the time defendant pled guilty. The State had not yet moved for a discretionary persistent offender extended term. And, while the State's motion was ultimately granted, the fifty-year NERA term initially imposed by the trial court was reduced to a twenty-five-year NERA term on resentencing. Defendant has not demonstrated that he would not have pled guilty to the certain persons charge had he known his sentence for the robbery would be a twenty-five-year NERA term. See State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009) (holding that to set aside a guilty plea based on ineffective

assistance of counsel, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial." (alteration in original) (quoting State v. DiFrisco, 137 N.J. 434, 457 (1994))).

Although defendant entered his guilty plea as part of a plea agreement, the judge did not place much weight on this factor and stated it had "little effect" in denying defendant's motion.

The judge court found that withdrawal of defendant's guilty plea would neither unduly prejudice the State nor give defendant an unfair advantage. He therefore concluded that the fourth factor "weigh[ed] in favor of withdrawal of [d]efendant's guilty plea."

We conclude that the trial court properly applied and weighed the Slater factors. The record amply supports its finding that three of the four Slater factors weighed against allowing defendant to withdraw his guilty plea. (Da24). We discern no abuse of discretion.

## II.

Defendant contends that his ten-year term sentence was excessive. We review a trial court's sentencing determination deferentially, State v. Lawless, 214 N.J. 594, 606 (2013), and do not ordinarily substitute our judgment for that

of the sentencing court.  State v. Liepe, 239 N.J. 359, 370-71 (2019) (citing State

v. Fuentes, 217 N.J. 57, 70 (2014)).  Our review is limited to consideration of:

> (1) whether guidelines for sentencing established by the Legislature or by the courts were violated; (2) whether the aggravating and mitigating factors found by the sentencing court were based on competent credible evidence in the record; and (3) whether the sentence was nevertheless "clearly unreasonable so as to shock the judicial conscience."
>
> [Liepe, 239 N.J. at 371 (quoting State v. McGuire, 419 N.J. Super. 88, 158 (App. Div. 2011)).]

In our prior opinion, we found:  "Defendant's criminal history is lengthy

and includes juvenile adjudications.  He has been sentenced on ten different

occasions between 1991 and 2013 for twelve indictable offenses and served

prison and probation terms.  Defendant has violated both probation and parole.

He has also been convicted in municipal court of several offenses."  Jones, slip

op. at 12-13 (footnote omitted).  Those same findings apply here.

Defendant argues that the court failed to adequately weigh the aggravating

and mitigating factors when it sentenced him to a maximum term.  We disagree.

The court noted that defendant's record included five adjudications of

delinquency, four probationary terms, and four violations of probation (VOP) as

a juvenile.  As an adult, defendant incurred five disorderly persons convictions,

16

twelve prior indictable convictions, seven probationary terms, six VOPs, five prison terms, and five parole violations.

The record fully supports the aggravating factors found by the court and its conclusion that those factors outweighed the non-existent mitigating factors. Defendant is fairly characterized as a persistent offender who has been committing offenses since he was fourteen. Imposing the recommended maximum term was not an abuse of discretion. Importantly, the sentence runs concurrently with the much longer NERA term imposed for the armed robbery. Defendant's sentence is not manifestly excessive or unduly punitive and does not shock the judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-5502-18T2