**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1365-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ERIC OBUGYEI,
a/k/a ERIC B. OBUGYEI,
and ERIC BOFAHO,

     Defendant-Appellant.

_____

Submitted June 7, 2021 – Decided June 17, 2021

Before Judges Rothstadt, Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 10-10-1875.

Joseph E. Krakora, Public Defender, attorney for appellant (Jennifer M. Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Deepa S.Y. Jacobs, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Eric Obugyei appeals from the Law Division's December 31, 2020 denial of his motion under Rule 3:21-10(b)(2) for release from prison due to illness or infirmity. On appeal, he contends that the trial court erred by concluding he could not seek release under the Rule until he completed his mandatory period of parole ineligibility required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2 and, in any event, he did not meet the criteria for medical release.

Defendant is currently incarcerated in State prison, serving a fourteen-year NERA sentence that the trial court imposed in 2012 after defendant pled guilty pursuant to a plea agreement to first-degree kidnapping. On October 10, 2020, defendant filed his motion for release and asserted that due to his medical condition, atrial fibrillation (Afib), he was at risk of suffering a serious illness if he contracted COVID-19 while in prison.

At the time he filed his motion, defendant was thirty-one years old. A review of his medical records submitted as part of his motion for release reveals he had an EKG on August 6, 2020, and the results came back normal. He also took COVID-19 tests in May, July, and August 2020, and all results came back negative. He underwent a physical exam on July 29, 2020, which yielded normal results. He takes aspirin as part of his daily medication routine.

2

While incarcerated, defendant obtained his G.E.D. and associate degree from community college. He also received several certifications and completed a number of programs.

In support of his motion, defendant also submitted two reports from professionals who specialize in the effect of infectious diseases, like COVID-19 specifically, in the context of detention settings. One report was from Dr. Jaimie Meyer, an assistant professor of medicine at the Yale School of Medicine and assistant clinical professor of nursing at the Yale School of Nursing. She is board certified in internal medicine, infectious diseases, and addiction medicine, and she has worked on infectious diseases in the context of detention settings for over a decade. The other report was from Chris Beyrer, a professor of epidemiology, international health, and medicine at the Johns Hopkins Bloomberg School of Public Health. Neither report addressed any of defendant's health conditions or any specific risk to him. Instead, the two experts discussed in general terms the danger of the COVID-19 pandemic to prisoners.

Judge Keith Bachmann heard oral argument on December 10, 2020, before he entered an order denying defendant's motion on December 31, 2020.[1] In an accompanying statement of reasons, Judge Bachmann explained that because

---

[1] The transcript of the oral argument was not provided on this appeal.

 A-1365-20

defendant was sentenced under NERA, he was not eligible for parole until May 4, 2022, and that the medical records defendant submitted in support of his motion did not contain an "opinion from any physician[] as to what . . . defendant suffers from, much less that any malady would be exacerbated by his incarceration," nor did they contain an expert opinion "that medical treatment available outside of the prison system would avoid said exacerbation."

The judge then reviewed the contents of defendant's medical records and concluded that while they revealed defendant had complained of various ailments, "the results of the objective testing did not support his complaints." Judge Bachmann also observed that even if defendant established that he suffered from an illness and that treatment "to prevent further deterioration of his health" was not available in prison, defendant would still not be eligible for release under our holding in State v. Mendel, 212 N.J. Super. 110, 113-14 (App. Div. 1986). Quoting our opinion in Mendel, the judge stated a "defendant [who] is serving a parole ineligibility term . . . required by statute" is not eligible for release under Rule 3:21-10(b) until "after completion" of that term.

Judge Bachmann continued by applying the Court's holding in State v. Priester, 99 N.J. 123 (1984), which stated that "[t]he predicate for relief . . . is proof of the serious nature of the defendant's illness and the deleterious effect

of incarceration on the prisoner's health." He noted again that defendant had not vaulted the medical threshold for consideration but, had such proof existed, it would have led to a balancing of, as the judge stated, "the idea of releasing the defendant against the need to deter a defendant who has committed a serious crime." If defendant had met that criteria, the judge stated the "balance . . . would rest in favor of continuing the defendant's incarceration." Finally, the judge considered defendant's arguments that the Court Rules should be relaxed under Rule 1:2-2 and that the denial of release violated defendant's federal and state constitutional rights, concluding that a relaxation was not warranted and none of defendant's rights had been violated. This appeal followed.

On appeal, defendant argues the following points:

POINT I

DEFENDANT'S MANDATORY MINIMUM UNDER NERA DOES NOT PREVENT A TEMPORARY CHANGE IN CUSTODY, DUE TO AN ILLNESS OR INFIRMITY.

POINT II

THE TRIAL COURT MISAPPLIED THE PREVAILING LAW AS IT RELATES TO THE FACTOR[S] UNDER STATE V. PRIESTER, REGARDING THE 'SERIOUS NATURE OF DEFENDANT'S MEDICAL CONDITION AND THE

DELETERIOUS EFFECT OF INCARCERATION ON DEFENDANT'S HEALTH.'[2]

We are not persuaded by these contentions.

Rule 3:21-10(b)(2) provides: "[a] motion may be filed and an order may be entered at any time . . . amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant." "Courts apply a balancing test to determine whether this 'extraordinary relief' should be granted." In re Request to Modify Prison Sentences, 242 N.J. 357, 378 (2020) (quoting Priester, 99 N.J. at 135).

Generally, to obtain such relief, an "inmate[] must [first] present evidence of both an 'illness or infirmity'—a physical ailment or weakness—and the increased risk of harm incarceration poses to that condition. A generalized fear of contracting an illness is not enough." Id. at 379. Also, before the pandemic,

---

[2] Defendant's second argument is restated here as it appears in the beginning of defendant's merits brief. In the body of his brief, he rephrases his second argument as:

> POINT II
>
> THE TRIAL COURT IMPROPERLY DETERMINED THAT DEFENDANT FAILED TO PROVE THAT HE HAD A MALADY OR THAT REMAINING IN PRISON WOULD CAUSE HIS HEALTH TO DETERIORATE.

6

an inmate was required to make a showing of changed circumstances, but now that requirement is satisfied where the inmate relies on the pandemic. Ibid.

If that "predicate" showing is made, "courts [then] consider 'the serious nature of the defendant's illness and the deleterious effect of incarceration on the prisoner's health.'" Id. at 378. Additionally, the court must consider "'the availability of medical services in prison'; 'the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant, [and] the risk to the public if the defendant is released.'" Id. at 378-79 (alteration in original) (quoting Priester, 99 N.J. at 135-37).

"A motion made pursuant to [the] Rule . . . is committed to the sound discretion of the court." Priester, 99 N.J. at 135. We review decisions granting or denying relief under the Rule for an abuse of discretion. Id. at 137. An abuse of discretion arises where "a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)); State v. Williams, 458 N.J. Super. 274, 280 (App. Div. 2019).

Applying these guiding principles, we conclude that Judge Bachmann did not abuse his discretion when he denied defendant's motion under the Rule,

substantially for the reasons expressed by the judge in his thorough written decision. The judge considered defendant's application in light of the pandemic and determined there was an insufficient demonstration that defendant's continued incarceration exposed defendant to a serious risk of harm, as there was no evidence that defendant suffered from any malady that was exacerbated by his incarceration nor that his condition necessitated medical care that the Department of Corrections could not provide. The judge also found that even if defendant had established that he had a medical condition and that his incarceration was causing a deterioration in that condition, the severity of the crime for which defendant was convicted would likely bar his release under the Rule.

We are not persuaded otherwise by defendant's reliance on State v. Tumminello, 70 N.J. 187, 193 (1976). In that case, unlike here, there was substantial evidence of the serious nature of the defendant's illness, the effect of incarceration on the defendant's health, and the lack of knowledge of the nature of the defendant's illness before the sentencing court. Id. at 193-94. Moreover, in ordering the defendant's release in that case, the Court provided a word of caution to judges reviewing applications for release under Rule 3:21-10(b), where, like here, the underlying crime was of a serious nature. The Court stated

"[t]he scale might very well tip in favor of incarceration despite the possibility of adverse physical effects were we faced with an experienced criminal or with a more shocking crime." Id. at 194.

We also conclude Judge Bachmann correctly found that defendant's Rule 3:21-10(b)(2) motion was barred due to the fact that he is currently serving a sentence subject to a mandatory period of parole ineligibility under NERA. Where a defendant is serving a mandatory period of parole ineligibility, a judge may not grant a defendant relief absent a showing of immense need, such as the unavailability of vital medical assistance. See Mendel, 212 N.J. Super. at 113-14 ("[W]hen defendant is serving a sentence required by the Graves Act he may not make an application under R[ule] 3:21-10(b). . . . [T]he application can be considered under R[ule] 3:21-10(b) consistent with case law and based on circumstances appearing after completion of the parole ineligibility term required by statute.").

Contrary to defendant's contention, the bar against releasing a defendant until he has completed his period of parole ineligibility is not limited to applications made under Rule 3:21-10(b)(1).[3] See Mendel, 212 N.J. Super. at

---

[3] Rule 3:21-10(b)(1) states: "A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant

112-113 ("[A] sentence cannot be changed or reduced under R[ule] 3:21-10(b) below the parole ineligibility term required by statute. R[ule] 3:21-10(b) was never intended to permit the change or reduction of a custodial sentence which is required by law."); see also State v. Brown, 384 N.J. Super. 191, 194 (App. Div. 2006) (holding that "when a parole ineligibility minimum term is required by statute, a court has no jurisdiction to consider a R[ule] 3:21-10(b) application").

Under the circumstances presented in this case, Judge Bachmann properly exercised his discretion by denying defendant's motion because he was not eligible for release under the Rule, and even if he was, defendant failed to prove any medical need for his release.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse."

A-1365-20